UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:12-CR-067 JD |
| | ) |
| LUIS OMAR MONTES MERINO (04) | ) |

ORDER

On July 5, 2012, a detention hearing was held in this case before Magistrate Judge Christopher A. Nuechterlein. At the hearing, the defendant, Luis Omar Montes Merino stipulated to detention, and Judge Nuechterlein ordered him detained. The defendant subsequently reconsidered and sought release. He first sent a letter to the Court himself requesting release. Though the magistrate judge noted that it was not appropriate for Mr. Merino to file motions on his own behalf while he was represented by counsel, the magistrate judge considered the request and ruled that Mr. Merino's change of mind regarding detention was insufficient to warrant reconsideration of the order of detention. *See* DE 64. Mr. Merino then properly filed, through counsel, a motion seeking to have the detention order reviewed. *See* DE 96. Following some uncertainty regarding which judge the defendant was seeking a hearing before, the undersigned held a detention hearing on December 13, 2012, at which it took evidence by way of proffer and heard argument. *See* DE 129.

At the hearing, the government argued that Mr. Mernio posed a substantial flight risk that no condition or combination of conditions of release would reduce, because he was facing a likely conviction (given the weight of the evidence), jail sentence (given the anticipated advisory guideline range), and ultimately removal from this country (given his status as an illegal alien),

1

which gave him a very strong incentive to flee, either from the country or into hiding, to avoid prosecution and punishment. The government proffered the following evidence of Mr. Merino's involvement in the alleged conspiracy:

1. Mr. Merino was involved in a statewide conspiracy to assist undocumented aliens obtain vehicle registrations, license plates, and titles by circumventing procedures implemented by the Bureau of Motor Vehicles to prevent individuals without valid social security numbers from obtaining these items.

2. On April 11, 2012, undercover agents posing as undocumented aliens visited one of the conspiracy's business locations seeking Omar Duran Lagunes. Mr. Merino answered the agents' questions, informed them that Duran was not available, and suggested that they call Duran later in the day. Govt. Ex. 1.

3. On April 18, 2012, agents returned to the same location and were again met by Mr. Merino. When one of the agents asked for the papers, she was asked for payment and given her paperwork and license plate. Mr. Merino also explained how the agent might avoid detection if stopped by law enforcement. Govt. Ex. 2.

4. On May 3, 2012, another agent went to a different location, where he was also met by Mr. Merino. The agent told Mr. Merino that he was there to pick up a license plate from "Omar." Mr. Merino provided the agent with paperwork and plates and, in response to the agent's questions, explained why the plate was a commercial plate and how to avoid suspicion if pulled over by the police, and assured the agent that the services were legal. Govt. Ex. 3.

5. On May 10, 2012, law enforcement agents searched Merino's home and discovered business cards for Omar Duran's business, numerous receipts and certificates of title, and

        a firearm. Gov't Ex. 4.

6.       A search of one of the business locations on the same day uncovered similar items. Gov't Ex. 5. At this search agents also discovered several identifications and fake Social Security cards for Mr. Merino and his girlfriend. Gov't Ex. 6.

The government also represented to the Court the potential sentences that Mr. Merino would face if convicted. The statutory maximum sentence would be 30 years—10 on Count 1 and 20 on Count 2—and the guideline ranges would arguably be 51–63 months on Count 1 and 78–97 months on Count 2. The government also provided the Court with information that one defendant in a parallel investigation had already received a sentence of 33 months. Regarding Mr. Merino's immigration status, the government explained that he was in the United States illegally and that removal proceedings were pending against him.

Mr. Merino, by counsel, challenged the weight of the evidence by the government, arguing that he was merely an employee of Omar Duran and never a member of the conspiracy. He also argued that he had no interest in fleeing the country because he has a child here and his girlfriend is pregnant with their second. He submitted that his fake identification cards had been confiscated and offered to wear a GPS tracking device.

This Court conducts its review of the magistrate judge's detention order consistent with 18 U.S.C. § 3145(b). This Court's review of the order is *de novo* and must be supported by its own finding of facts and reasons for its decision.  *See* 8 C.J.S. *Bail* § 99 (2010); *United States v. Jimenez*, 628 F.Supp. 808, 809 (N.D.Ill. 1986).  In order to justify detention, the burden is on the government to prove either that the defendant is a flight risk or a danger to the community. *United States v. Levine*, 770 F.Supp. 460, 465 (N.D.Ind. 1991); *United States v. Leibowitz*, 652 F.Supp. 591, 596 (N.D.Ind. 1987). The statute governing detention in this case, 18 U.S.C. §

3142(g), provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

After considering these factors, the Court finds that pre-trial detention is appropriate. While the indicted offense in not a crime of violence, a controlled substance offense, or a firearm offense—and thus does not suggest that Mr. Merino is a danger to the community—it is a serious offense that carries a substantial punishment. The weight of the evidence that Mr. Merino was a member of a conspiracy to violate immigration and mail fraud laws is substantial, and the Court finds a reasonable likelihood of conviction. This prospect of conviction, combined with Mr. Merino's ties to Mexico and to others in this country adept at evading detection by law enforcement (as evidenced by his involvement in the alleged criminal scheme and his possession of multiple sources of identification), convince the Court that Mr. Merino is likely to flee the

4

jurisdiction or go into hiding if ordered released. Further, while a GPS tracking device would certainly alert probation officers if he removes the device, it will not be of much assistance in locating him if the device were removed.

The Court has also considered Mr. Merino's history and characteristics. He has one misdemeanor conviction for operating a vehicle while intoxicated, which does not establish him as a serious risk and reveals little about his flight risk. He was not under any sort of supervision at the time of his arrest. He is unemployed and cannot legally work due to his status, though he has other personal and financial ties to the Indianapolis area, including family connections and a home. The Court finds that these connections do not substantially reduce the risk of flight, because it is just as likely that his girlfriend and children would follow him into hiding or out of the country if given the chance. Therefore, the Court finds that the government has demonstrated, by a preponderance of the evidence, that Mr. Merino is a serious flight risk and that no condition or combination of conditions will reasonably assure his appearance as required. *See* 18 U.S.C. § 3142(e).

For the aforementioned reasons, this Court concludes that pre-trial detention is appropriate for the Defendant in this case. The Motion to Review [DE 96] is denied.

SO ORDERED.

ENTERED:  December 17, 2012

                                              /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court